All right, thank you everyone. Our third case this morning is A. B. v. Brownsburg Community Schools. Good morning. May it please the court, Rory Atwood on behalf of Appellant C. B. and his parents and his mother is with us here in the courtroom today. This case comes before the court as an appeal of a summary judgment decision from the court below. The issue in this Individuals with Disabilities Education Act case is whether C. B. is the prevailing party for purposes of recovering his reasonable attorneyship. Under controlling United States Supreme Court precedent in Buchanan Board and Care Home v. West Virginia Department of Health, if a party obtains an award of some of the relief sought and there is a judicially sanctioned change in the legal relationship of the parties, then the party is entitled to recover their attorney's fees. And that includes administrative adjudications, as I understand. That includes administrative adjudications, which is where all of these Individuals with Disabilities Education Act cases begin. Is there a difference? No, please. No, please. No, Judge Roberts. All right. Thank you. Judge Robner, I think you're up. I'm sorry. I guess so. Does it matter that the July order, what was it, July 30th order, was only an interim order and that the final judgment made no finding in the parents' favor? Well, it's our position, Your Honor, that the final order, the order of dismissal, did incorporate the July 30th finding. In fact, it says in that order of dismissal at appellant's appendix, page 33, there being no reason to delay services, the IHO independent hearing officer issued a finding of eligibility, that July 30th order, for a case conference committee to develop an individual education program and for the school to begin providing services no later than August 26th. So that's incorporated into her order of dismissal. So, no, I don't think the fact that she entered this interim order that gave CB the relief he sought, I don't believe there's any change in the fact that this interim order, this finding of eligibility in order to convene CAFE's conference committee, where she found as a matter of fact that the student had a disability, as a matter of law that he was entitled to services under the Individuals with Disabilities Education Act, went on to order that the parties convene a meeting to develop the individual education program by a date certain, that Brownsburg pay for one of CB's experts to attend, and that Brownsburg begin to provide services by a date certain. This was not appealed, this decision, this order was not appealed by Brownsburg, and it gave, Brownsburg even admits in their own briefing that it gave something to CB that it had not otherwise agreed to, which was date certain by which this was to happen. CB filed for due process because Brownsburg had failed to appreciate that his disabilities, his generalized anxiety disorder, and his depression and attention deficit hyperactivity disorder were qualifying disabilities under the IDEA. Let me back you up, did the dates certain, that I think it's indisputed the hearing officer kind of set into place, did that change, materially change the legal relationship with the parties, or did the stipulation do that, which then triggered the Code of Federal Regulations, which say as soon as there's been a determination of eligibility, and a finding of disability, then an IEP needs to be put into place. So let's assume, for example, you all weren't even before this hearing officer, if Brownsburg says, okay, I finally agree, he has this disability, under the Code of Federal Regulations, an IEP must be developed at that point. One doesn't even need a hearing officer to say that. Well, I have two responses to that, Your Honor. First of all, the stipulation itself says, although respondent does not agree, they are willing to offer these stipulations to be ordered and resolve this case. So the stipulation itself was not an enforceable document. The second response is, if they came forward and said, okay, we've decided he's eligible, then enforcement of that decision, if they didn't then put together the education program, parents would have had to file for due process and pursue that relief. They didn't have to do that in this case because they have an order. They have an order that says you will do it, and you will do it by this date. And if they fail to do that, then it's enforcement, it's a motion to enforce this order, not starting all over at the due process stage. So there's a significant difference there. If we were to find that the parents are eligible for fees, do you agree that if there was foot dragging or manipulation on the part of either side in the dispute, the district court could take all of that into account in deciding what fee award is appropriate? Absolutely. Under the statute, the district court wants, if this court reverses the decision below and CB is the prevailing party, then the district court has to do what they do in every fee case, which is make a determination of what reasonable fee is appropriate. And there are provisions in the Individuals with Disability Education Act that deal with that issue of, okay, if there was unreasonable delay or something like that, that's to be considered. Those are facts to be found by the district court once we establish, as we believe is clear here, that CB was the prevailing party because he had an order that gave him rights, the very rights he sought when he filed for due process. Up until this point, seven days before the due process hearing, the district had taken the position he was not entitled under the IDEA. This order changed all that. It's our assertion that the district court here simply misinterpreted what's required under Buchanan, the case there that was dismissed as moot. And as this court knows well, in the Bingham case, Judge Robner's decision in Bingham, where again the case was dismissed as moot because the plaintiff had received all they were going to receive and did not, and accepted that settlement. And I'll reserve the remainder of my time for rebuttal. Thank you. May it please the court. I'm Ellen Seidman. I'm here today on behalf of the Amicus Curiae Council of Parents, Attorneys, and Advocates. We're here today because of the importance of the fee issue here. Congress recognized what amended the Individuals with Disabilities Education Act in 1986 that without attorney's fees, parents' rights under the statute were meaningless. Without counsel, the student here would not have been found eligible for special education services. The statute provides several off-ramps for school districts to avoid or reduce fees. First, the school district can comply with the law. This is what parents prefer. The school has the legal obligation to child-find, to find children eligible and provide services. Parents would much prefer to have their children's needs met without having to retain a lawyer. Second, once parents pursue a hearing request, there are at least two off-ramps for school districts to avoid or reduce fees. First, Congress in 2004 amended the statute specifically to provide a resolution session. The first 30 days after the hearing request is filed, the school district has the opportunity to meet with the parent and resolve the case, either through the resolution session or mediation. And in both cases, the parents obtain a legally binding agreement that is enforceable. Congress also provided for a 10-day offer 10 days before the hearing, modeled after Rule 68. The district can offer a settlement, and if the parents reject it, their fees can be limited to those incurred before the offer. But if they accept the offer, again, they get an enforceable settlement agreement. And it's important to note that Congress adopted the resolution session in part to expedite the services for children, to ensure that children get the special education they need as soon as possible. And in this case, the original hearing request, second hearing request was filed on November 1st. The resolution period was over December 1st, and if the district had resolved the case at that time, the student would have been able to receive services starting in December rather than waiting another seven months. Now, the structure of the statute presumes that once the parents have had to hire an attorney, they have the opportunity to negotiate for fees in the resolution agreement or mediation, or if they prevail, and even if they reject the Rule 68 offer, they get fees at least incurred until the offer. The statute, as the Second Circuit recognized in the Board of Education v. CS case at 990 F. 3rd, and 952, does not provide for the school district to unilaterally resolve the case. All Buchanan requires is a judicial order that legally changes the relationship between the parties. That's what happened in this case. The parents obtained a judicially enforceable order, and I think it's important to note with regard to the question regarding the dates. The dates are really critical for parents. Having these meetings happen, the case conference happen, having the services happen, is really important. And in my experience, the school districts will often defer a meeting until after the school year starts when their staff are on salary. And so having the court's order here, the hearing officer's order, which provided specific dates for performance, did change the legal relationship between the parties, and the parties are therefore entitled to fees under the Buchanan case. If there are no further questions, I'll give the six seconds to Mr. Atwood. Mr. Smith, good morning. Good morning. Good morning. Your Honors, Judge Rovner, Judge Sykes, Judge Jackson-Acme, Acme, I'm sorry. Thank you, and may it please the court. I think, Judge, you specifically hit the nail on the head with the important question here today, and that is, what was it that materially changed the relationship between the parties? The case law in this area is clear that per Buchanan, a plaintiff who receives relief during litigation is only a prevailing party. If that relief resulted from a material change in the party's legal relationship brought about by an order of the judicial officer, if the defendant irrevocably commits to providing the demanded relief voluntarily, rather than because of the judicial officer determined it must do so, then the plaintiff is not a prevailing party, and that is precisely what happened here. Why would Brownsburg submit this stipulation that Mr. Atwood pointed us to? In paragraph 11 of the stipulation, respondent offers, respondent is willing, they are willing to offer these stipulations to be ordered and resolve the case. Can you address that language? Absolutely, Your Honor. The school wanted to end the litigation. They wanted to end it without a hearing, and so that it didn't have to go through with the time and expense of the hearing or whether the hearing officer would accept the stipulation as having ended the case. So if you read that language carefully, it's saying although we don't agree with your need to do this, if you want to do it, you can. You can put this into your order and make it a consent decree. The key fact is she didn't. She didn't do it in her July 30th order. She didn't do it in her July 16th order canceling the hearing. She didn't do it in any order after that. She partly did it. She partially did it. She accepted the proffered consent decree, essentially the stipulation to entry of an order against it, your stipulation to entry of order against the school district to the extent that it would declare, or she would declare the child eligible for services and that an IEP be developed by a date certain, complete with the case conference that precedes that, and that the school district pay for at least one expert. So she partly entered a consent decree or the functional equivalent of a consent decree in the administrative context pursuant to your stipulation for entry of that order. I would respectfully disagree. And the reason is in that context, the consent decree exception to the otherwise the rule from Buckhannon, it requires the judge to adopt, specifically adopt it with the express intent of putting the judicial enforcement mechanism on compliance with it. But she asked to review it and adopt it and agree with the provisions. The only thing that she agreed with was the fact that she noted the parties have agreed to eligibility. And then she set forth three things that needed to happen. And the key thing there is that all of those three things were different than what plaintiffs had demanded and what the school had stipulated to. Those are what the stipulation did. The stipulation set forth all the things that the plaintiffs had demanded and then went through and said, we agree to do this, we agree to do this, we'd agree to do this. Those dates certain, those are not what plaintiffs had demanded in their most recent counteroffer, which is what we were responding to in our stipulation. The counteroffer letter was sent on July 10th. We then, that's a Friday and the following Monday, we filed the stipulation listing the counteroffer letter and everything that they had asked for. And so it simply can't be the case that an order that was issued simply to speed up the process of doing what the parties were now already legally obligated to do. The stipulation didn't bind you. You could withdraw it at any time. It wasn't a settlement agreement, so it wasn't a contract that could be enforceable in court. I disagree, Your Honor, and I think that that, and I suppose this is an administrative proceeding, the rules of evidence don't apply, but stipulations aren't self-executing. They require some adjudication and adoption by the adjudicative authority to give them effect. I disagree on an important point there, and this actually, the plaintiffs themselves, in their July 22nd motion to dismiss that they filed with the hearing officer, you don't need to hold any hearings. You don't need to do anything else because under Indiana law, these stipulations are judicial admissions that are binding on this hearing officer and are binding on the school. The school can't get out of it. They can't withdraw it. They can't do anything in that regard, and in that respect, that's what makes this case the equivalent of Judge Rovner's opinion in Bingham. In Bingham, that was a case in which the only thing at issue was money, whether the school should have to pay for the private schooling that the IDE-eligible student had gone through. The school wrote a check and sent it to the parties right before the hearing, and the key aspect of Judge Rovner's opinion, when I read it, it wasn't the fact that the plaintiffs had cashed it. It was the fact that the school had sent it, and by sending it, it had irrevocably given to the other side all that they had demanded. In an eligibility case, not a money case for payment of private school fees, but in an eligibility case, this is the exact equivalent of what happened. By filing that judicially binding stipulation, which, Judge, you noted, that materially altered the party's position because once under the IDEA, the school agrees to eligibility, that is the legal domino that tips, that kicks everything else into happening, and so that's all this July 30th order did. It made, it certainly, she said, yes, Judge Rovner. Yeah, thank you. Oh, gosh, that's a great way to do it, isn't it? Look, even if it was really the school district's stipulation that resolved the matter, given that it was not filed 10 days or more before the scheduled date for the due process hearing, why didn't we recognize it for purposes of assessing the parent's eligibility for fees? Because, Your Honor, this is not a case about the 10-day offer of settlement provision in the statute. The statute, by its own language, specifically provides the prevailing party language, and that's important because that provides, as your opinion in Bingham recognized and as the Supreme Court's opinion in Buckhannon recognized, it allows that if a school or a defendant voluntarily capitulates and gives to the other side what they've demanded before there's a hearing, that makes the person no longer a prevailing party. So the statute itself specifically acknowledges this form of procedural activity, and it's important because Buckhannon came down in 2001. This court's opinion in TD came down in 2003 along with two other circuits. 2004 is when the IDEA was reauthorized by Congress, and they didn't change the language to say we want to do something different by changing prevailing party so that Buckhannon's ruling won't be applied here as the circuits are now doing, and that was in 2004. And in the last 18 years, nearly all the circuits have decided that the IDEA is the prevailing party language there, is what Buckhannon said it was, and Congress still hasn't changed it. Those, as you said in Bingham, those are best left to Congress and the Supreme Court, not this court. So we would... I worry. I have to tell you, I do worry about the lateness of the stipulation, and I took heart from the briefs of the parents and the council of parent attorneys. I do tend to agree that ignoring the lateness of the stipulation would truly encourage a school district, sadly, to drag its heels and then concede liability, you know, at the 11th hour just to avoid liability for the parents' attorney students. I mean, for me, it's a worry here. Your Honor, if I may, I would like to say two things in response to that. First of all, this wasn't a case of foot dragging on the part of the school where they finally gave into the demands of the plaintiff at the 11th hour. If you look at the history of the case, the school had been negotiated with the family. The hearing officer obviously thought there was a need to enter interim findings in order to ensure that the parties would complete an IEP and that CB could begin to receive services on a timely manner, seems to me. I agree with you, Your Honor, that that was the express purpose of this July 30th order. It was not to grant relief. And importantly, and this is what distinguishes this case from this court's opinion in TD. In TD, the parties could not agree on whether there should be an eligibility determination of the report that is needed to be drafted. And then they go into the case conference committee to determine eligibility. The parties could not agree on whether that pre-case report should be drafted or not. They submitted that contested issue to the hearing officer. And in a settlement or a pre-trial conference, she heard the party's arguments on that issue and made an adjudicatory ruling on that question and ordered the school to conduct the evaluation. And so that order had the judicial imprimatur that was needed. It's a judicial imprimatur and judges review contested issues and they render a decision and then order people to do things because of it. And that's what makes this case distinctly different. But Your Honor, in terms of the July 30th order, let's just remember what it did. It didn't memorialize specifically these points in order to force the school to do something that at that point it had not been determined to do. And these weren't contested issues. It wasn't a contested issue when they should meet. It wasn't a contested issue by when the IEP should be drafted and it wasn't a contested issue as to how many experts they were going to pay for. The school, in its stipulation, the parties, the plaintiffs are saying, we demand that the case conference committee meet 10 days after the settlement agreement and we demand that the IEP then be drafted at that case conference committee. And so, all that the judge's ruling was doing was changing what the plaintiffs had demanded to speed things up and give things more certain time. But it wasn't her intent to place the judicial imprimatur of the court behind that to make that an enforceable grant of relief.  what the First Circuit held in Smith versus Fitchburg. There was a lot of orders in that, interlocutory orders in that case where the hearing officer was ordering the school to do things including its first order, which was ordering them to meet in a case conference committee by a date certain. And, as the First Circuit said, the only reason she was entering that order was because it was, the legal domino had already been tipped. The school had already agreed to eligibility and so all of these other things were simply, the orders critically didn't materialize and didn't materially alter the legal relationship between the parties and that's what's important here. Giving the parties two deadlines different than what the plaintiff had demanded and therefore the school had agreed to didn't materially alter the legal relationship between the parties. That order simply, and I'll read from the First Circuit, memorialized the voluntary concessions made by the school and were not intended to place the weight of judicial authority behind the school's substantive concessions that the student who was entitled to the IEP. And if you look at the judge's other orders, it's clear that she was not willing to let, she was not intending for this July 30th order to be the equivalent of consent decree because she consistently said in July 16th and in her subsequent orders, I have told you I am not going to entertain any motion from the parties except for a motion to dismiss filed by the plaintiffs. I'm not going to reschedule a hearing. We're not going to have a hearing. You guys have six weeks to see if you can settle the issue of attorney's fees and if not, I'm going to dismiss this case. What is the legal force of the order? What's the legal force of the order? The July 30th order and the August order incorporating it. The legal force of that order is to simply give the parties deadlines to do things they were already obligated and committed to do. And if that did not occur, what would happen? If they didn't meet those deadlines, it would depend on, again, who was the non-compliant party? Because, again, it didn't order the school to do things it wasn't already willing to do. It ordered the parties to do these dates. So the compliant party would be able to go to the judge and say, judge, they're not doing this right.   didn't meet the deadline, please ask them to do so. Which is exactly what happened in Smith v. Fitchburg. And those orders didn't have the necessary judicial imprimatur. There was an ultimate settlement in that Smith case which we don't have here. I don't know if there's a question of prevailing party status on these facts. The key thing in Smith was the focus on the interlocutory order. Why was it developed? And that's the equivalent of what we have here, an interlocutory order. And the reason that order was issued was not because it was making a judicatory determination on a contested fact. It was simply to further along the things that the parties were already obligated to do. And that's what Smith said is not the necessary judicial imprimatur. Thank you, Your Honor. Thank you. Mr. Atwood. Thank you. Your Honor, I think as the court clearly recognizes, this case did not have a settlement agreement. The settlement offer was made at the same time the stipulation filed. The settlement offer was denied and counsel prepared for hearing, expecting to go forward. The Smith case and the other cases referenced, there was a settlement agreement. In the Smith case, there was a signed settlement agreement and parents withdrew their hearing request. That's not what happened here. While counsel would like to guess at the judge's intent here, hearing officer Anderson's intent here, this finding of eligibility finally certainly gave great relief to CB's parents. CB's parents followed up the filing of the stipulation with a request. It said administrative record 169 and 170, an email request to set a case conference and Brownsburg denied and said we're going to wait until the hearing officer enters an order. So the stipulation was not something that was enforceable, but this was. And it created prevailing party status for CB and we respectfully request that the court reverse the decision below and remand this case for a determination of the reasonableness of the fees. Unless court has other  Thank you.